Donald J. Kula, Bar No. 144342
DKula@perkinscoie.com
PERKINS COIE LLP
1888 Century Park E., Suite 1700
Los Angeles, CA  90067-1721
Telephone:  310.788.9900
Facsimile:  310.788.3399

Amanda J. Beane (*Admitted pro hac vice*)
ABeane@perkinscoie.com
Ryan T. Mrazik (*Admitted pro hac vice*)
RMrazik@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101
Telephone:  206.359.8000
Facsimile:  206.359.9000

Attorneys for Defendant
Redbox Automated Retail, LLC

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHLEEN HOLT, for herself and all other similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>REDBOX AUTOMATED RETAIL, LLC.<br><br>Defendant. | Case No. 11-CV-3046 DMS RBB<br><br>CLASS ACTION<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT REDBOX AUTOMATED RETAIL, LLC'S MOTION TO STAY OR DISMISS WITHOUT PREJUDICE**<br><br>[*Notice of Motion Filed concurrently*]<br><br>Date:	July 20, 2012<br>Time:	1:30 p.m.<br>Judge:	Hon. Dana M. Sabraw<br>Courtroom:	10 |

**CONTENTS**

**Page**

I.   SUMMARY OF ARGUMENT ........................................................................................ 1

II.  FACTUAL AND PROCEDURAL BACKGROUND ....................................................... 1

    A.   Plaintiff's Complaint and Its Allegations ................................................................ 1

    B.   Petition for an Expedited Declaratory Ruling by SoundBite to the FCC ............... 2

III. ARGUMENT ..................................................................................................................... 4

    A.   Standard for Invoking the Doctrine of Primary Jurisdiction ................................... 4

    B.   The FCC Has Authority to Administer the TCPA, Which Sets a Comprehensive Regulatory Scheme and Requires Expertise and Uniformity in Administration ................................................................................. 4

    C.   The SoundBite Petition Presents the FCC With Several Unresolved Issues That Could Directly Bear on the Outcome in This Case ......................................... 6

IV.  CONCLUSION .................................................................................................................. 9

## I. SUMMARY OF ARGUMENT

The Federal Communications Commission ("FCC"), the federal agency entrusted with administering the Telephone Consumer Protection Act ("TCPA"), recently requested public comments in response to a Petition for Expedited Declaratory Ruling and Clarification filed by SoundBite Communications, Inc. ("SoundBite Petition").  The SoundBite Petition seeks guidance from the FCC on the central issue in this case—whether confirmation text messages violate the TCPA.  More specifically, the SoundBite Petition seeks a declaratory ruling by the FCC on the following: (1) whether the technology used to deliver confirmation text messages is an automatic telephone dialing system ("ATDS") under the TCPA, (2) whether a final, confirmation text message falls within the 30-day grace period allowed for processing opt-out requests under the TCPA, and (3) whether confirmation text messages sent in accordance with industry best practices are sound public policy and promote user privacy.  Numerous entities have weighed in on the SoundBite Petition or previously asked that the FCC provide guidance on these issues.

Given that the FCC has requested comment on the SoundBite Petition, there is an indication that the FCC could issue a declaratory ruling on these issues.  Because the issues raised in the SoundBite Petition are central to this matter, Redbox moves the Court to stay this matter or dismiss it without prejudice under the doctrine of primary jurisdiction.  To ensure uniformity of administration of the TCPA and benefit from technical and policy guidance from the federal agency that administers and interprets the TCPA, the Court should grant Redbox's motion.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Plaintiff's Complaint and Its Allegations

Plaintiff alleges that Redbox sent two text messages to her mobile phone in December 2011 without her consent.  Compl. ¶¶ 11, 14.  The first message stated that Redbox had received a request to enroll Plaintiff's mobile phone number in a Redbox Alerts text message program and asked Plaintiff to confirm this request.  *Id.* ¶ 11.  Plaintiff alleges that she replied "STOP" by text message.  *Id.*  She alleges Redbox then immediately sent her a confirmation text message that notified her she had been unsubscribed and provided a link to information about the applicable

1   Terms and Conditions. *Id.* ¶¶ 12, 14.  Plaintiff does not allege that Redbox sent her any other text
2   messages.  *See generally* Compl.  Plaintiff makes a conclusory allegation that Redbox sent her the
3   text messages using an ATDS.  *Id.* ¶ 15; *see also* Motion to Dismiss, Dkt. No. 11, at 5.

4       Redbox has moved to dismiss the Complaint because it fails to sufficiently allege the use
5   of an ATDS, as required by section 227(b)(1)(A)(iii) and because, as applied to the facts as
6   alleged in Plaintiff's Complaint, section 227(b)(1)(A)(iii) would violate the First Amendment.  *Id.*

7       **B.**    **Petition for an Expedited Declaratory Ruling by SoundBite to the FCC**

8       On February 16, 2012, SoundBite Communications, Inc. filed a Petition for Expedited
9   Declaratory Ruling and Clarification with the FCC.  Petition for Expedited Declaratory Ruling
10  and Clarification filed by SoundBite Communications, Inc., CG Docket No. 02-278 (filed Feb.
11  16, 2012), *available at* http://apps.fcc.gov/ecfs/comment/view?id=6016985981.  This was the
12  latest in a series of requests to the FCC seeking guidance about text messaging and the definition
13  of an ATDS with respect to text messaging.  *See, e.g.*, Comments of Wells Fargo Bank, N.A. &
14  Co. in Response to Fed. Commc'ns. Comm'n. Notice of Proposed Rulemaking (2010), CG Dkt.
15  No. 02-278, at 20 (filed May 21, 2010) (requesting clarification that the definition of an ATDS
16  does not "restrict the use of devices that merely support the dialing of numbers stored in
17  databases compiled for a specific purpose."), *available at* http://apps.fcc.gov/ecfs/comment/
18  view?id=6015638287; *see also* GroupMe, Inc., Petition for Expedited  Declaratory Ruling &
19  Clarification, CG Docket No. 02-278 (filed Mar. 1, 2012) (requesting that the FCC "issue a ruling
20  defining 'capacity' to encompass only equipment that, at the time of use, could, in fact, have
21  autodialed random or sequential numbers without human intervention and without first being
22  technologically altered."), *available at* http://apps.fcc.gov/ecfs/comment/view?id=6016996564.

23      The SoundBite Petition asks the FCC for guidance about whether an "immediate, one-
24  time reply" text message sent to a customer to "confirm[] an opt-out request," violates the TCPA.
25  Petition at 1.  It asserts that "[t]he software used to send SoundBite's confirmation text message
26  to those individuals requesting an opt-out does not allow random or sequential calls" [and] only
27  allows confirmation messages to those consumers specifically requesting an opt-out," clarifying
28  that the confirmation is a "precise, one-time response to an individual subscriber's opt-out text

1 message that goes only to the specific device through which the opt-out request was made." *Id*. at
2 6. The SoundBite Petition also asserts that (1) the one-time, final confirmation text message
3 should be allowed because it falls within the 30-day grace period allows for entities to process Do
4 Not Call requests from consumers[1] and (2) the opt-out confirmation messages are consistent with
5 good consumer policy and promote the public interest. *Id.* at 4-5, 7-9.

6 In response, the FCC requested public comment. Fed. Comm'ns. Comm., Public Notice,
7 CG Docket No. 02-278 (filed Mar. 30, 2012. Numerous entities have responded, almost all of
8 which supported the SoundBite Petition and emphasized the need for FCC guidance on the issue
9 of confirmation text messages under the TCPA.[2] SoundBite also expanded on its petition, noting
10 that "a wide range of government, political and other organizations also send opt-out
11 confirmations when consumers request to be excluded from future text messaging campaigns,"
12 including, in some circumstances, the FCC itself. Comments of SoundBite Communications,
13 Inc., CG Docket No. 02-278 at 4 (filed Apr. 30, 2012) (noting that under certain circumstances
14 unsubscribing from an FCC text message campaign would result in delivery of a final
15 confirmation text message to the subscriber), *available at* http://apps.fcc.gov/ecfs/comment/
16 view?id=6017032927. That the FCC has sought public comment indicates it could act on the
17 SoundBite Petition at any time and issue a declaratory ruling, thereby materially altering this

---

[1] 47 C.F.R. § 64.1200(a)(3)(iii)(B).

[2] *See, e.g.,* Comments of CTIA-The Wireless Association®, CG Docket No. 02-278 (filed Apr. 30, 2012), *available at* http://apps.fcc.gov/ecfs/comment/view?id=6017032890; Comments of Future of Privacy Forum, CG Docket No. 02-278 (filed Apr. 30, 2012), *available at* http://apps.fcc.gov/ecfs/comment/view?id=6017032945; Comments of GroupMe, Inc., CG Docket No. 02-278 (filed Apr. 30, 2012), *available at* http://apps.fcc.gov/ecfs/comment/view?id=6017032896; Comments of Mobile Mktg. Ass'n, CG Docket No. 02-278 (filed Apr. 30, 2012), *available at* http://apps.fcc.gov/ecfs/comment/view?id=6017032923; Comments of the Retail Industry Leaders Ass'n, CG Docket No. 02-278 (filed Apr. 30, 2012), *available at* http://apps.fcc.gov/ecfs/comment/view?id=6017033021; Comments of Twilio, Inc., CG Docket No. 02-278 (filed Apr. 30, 2012), *available at* http://apps.fcc.gov/ecfs/comment/view?id= 6017032948; Comments of Varolii Corp., CG Docket No. 02-278, (filed Apr. 30, 2012) *available at* http://apps.fcc.gov/ecfs/comment/view?id=6017032848; Comments of Verizon & Verizon Wireless, CG Docket No. 02-278 (filed Apr. 30, 2012), *available at* http://apps.fcc.gov/ecfs/comment/view?id= 6017032880; Comments of WMC Global, CG Docket. No. 02-278 (filed Apr. 30, 2012) *available at* http://apps.fcc.gov/ecfs/comment/view?id=6017032926; *see also* Reply Comments of SoundBite Commc'ns, Inc., CG Docket No. 02-278 (filed May 15, 2012), *available at* http://apps.fcc.gov/ecfs/ comment/view?id=6017035453; Reply Comments of Neustar, CG Docket No. 02-278 (filed May 15, 2012), *available at* http://apps.fcc.gov/ecfs/comment/view?id=6017035602.

litigation. *See* 47 C.F.R. § 1.2 (providing that the FCC may, on a motion or its own motion, issue a declaratory ruling terminating a controversy or removing uncertainty.).

### III. ARGUMENT

**A.   Standard for Invoking the Doctrine of Primary Jurisdiction**

Under the doctrine of primary jurisdiction, a court can either stay an action or dismiss it without prejudice when issues in the litigation are "within the special competence of an administrative agency" and therefore should be resolved by that administrative agency. *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008). To invoke this doctrine, a court must determine that an "otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the [administrative] agency with regulatory authority over the relevant industry rather than by the judicial branch." *Id.*; *see also Syntek v. Semiconductor Co. v. Microchip Tech. Inc.*, 307 F.3d 775, 780 (9th Cir. 2002). The Ninth Circuit generally considers the following factors when determining whether to invoke the doctrine of primary jurisdiction to stay or dismiss without prejudice: "(1) [the] need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." *Clark*, 523 F.3d at 1115 (internal quotation marks and citation omitted).

**B.   The FCC Has Authority to Administer the TCPA, Which Sets a Comprehensive Regulatory Scheme and Requires Expertise and Uniformity in Administration.**

The FCC's authority to interpret and administer the TCPA, particularly with respect to novel technologies and the definition of an ATDS, is well-established. In enacting the TCPA, Congress clearly placed regulatory authority for the interpretation and administration of this statute with the FCC. As the Sixth Circuit has explained:

> Congress vested the FCC with considerable authority to implement the [TCPA]. The Act gives the agency power to "prescribe regulations to implement" the legislation, 47 U.S.C. §§ 227(b)(2), 227(c)(1), 227(c)(2), to exempt calls from the requirements of the Act, *id.* §§ 227(b)(2)(B), 227(b)(2)(C), to intervene in suits filed by state attorneys general, *id.* § 227(f)(3), and to enforce the provisions of the Act and its accompanying regulations, *see, e.g.*, 22 FCC Rcd 19396

> (Nov. 9, 2007); 20 FCC Rcd 18272 (Nov. 23, 2005). In addition to these law-making and law-enforcing powers, the FCC has interpretive authority over the . . . Act, *see Chevron, USA, Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843-44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), and its accompanying regulations, *see Auer v. Robbins,* 519 U.S. 452, 461, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997).

*Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459, 466-67 (6th Cir. 2010); *see also Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951-54 (9th Cir. 2009) (affording deference to the FCC's reasonable interpretation of the meaning of the term "call" under the TCPA). Of particular relevance in this matter and in light of the Petition, the legislative history of the TCPA indicates that Congress intended to give the FCC "flexibility to consider what rules should apply to future technologies as well as existing technologies." *See* 137 Cong. Rec. S18781, S18784 (1991).

The FCC's authority under the TCPA is motivated in part by the need for nationwide uniformity. In enacting the TCPA, Congress noted that inconsistent state telemarketing rules and regulations would "frustrate the federal objective of creating uniform national rules" and that the TCPA should "promote a uniform regulatory scheme under which telemarketers would not be subject to multiple, conflicting regulations." Fed. Commc'ns. Comm'n., CG Docket No. 02-278, Report and Order ¶ 83 (July 3, 2003). Accordingly, since 1992, the FCC has administered this statute through regulations that account for complex technological and policy issues with respect to telephone, facsimile, and text messaging for non-marketing and marketing purposes throughout the United States. *See, e.g.*, *id.*; *see also id.* at Report and Order (Feb. 15, 2012); Report and Order (June 17, 2008); Declaratory Ruling (Aug. 17, 2005); Declaratory Ruling (June 15, 2005); Second Order on Reconsideration (Feb. 18, 2005); Order (Sept. 21, 2004); Report and Order (July 3, 2003); Memorandum Opinion and Order (Aug. 7, 1995); and Report and Order (Oct. 16, 1992).

Most relevant here, whether a particular type of technology constitutes an ATDS or could violate section 227(b)(1) is an issue the FCC has addressed before. *See* 47 C.F.R. § 64.1200(f); 2003 Report and Order, ¶ 133 (finding that certain types of dialing devices called "predictive dialers" meet the statutory definition under 47 U.S.C. § 227(a)(1)); *see also* Report and Order (July 3, 2003) (excluding certain calls for which the recipient is not charged for the call from 47 U.S.C. § 227(b)(1)); Order (Sept. 21, 2004) (exempting from the prohibition on the use of

1  autodialing technology calls to wireless number that were recently porter from a wireline service).
2  The FCC has also previously addressed the grace period that applies to the processing of opt-out
3  requests in the context of traditional telephone marketing and facsimile advertising.  2003 Report
4  and Order at Appendix B, ¶ 32; 2005 Second Order on Reconsideration, ¶ 22.

5  There cannot be serious dispute about the regulatory authority and expertise of the FCC,
6  the comprehensiveness of the TCPA regulatory scheme, and the need for uniform administration
7  under a statute created to provide "uniform nation rules" for covered activities.  *See, e.g.*, *Clark*,
8  523 F.3d at 1115 (finding the FCC administered the relevant statute and the telecommunications
9  industry, was currently considering the interpretive issue raised in the litigation, and that it was
10 "important to federal telecommunications policy" for the FCC to develop a "uniform regulatory
11 framework to confront this emerging technology."); *see also Charvat* 630 F.3d 459 (6th Cir.
12 2010) (invoking the doctrine of primary jurisdiction to stay a proceeding pending guidance from
13 the FCC).  Therefore, the only issue that remains for purposes of the primary jurisdiction analysis
14 is whether there is a need to resolve an issue in this litigation that the FCC has the authority to
15 resolve.  There is.  As elaborated below, the Petition presents the FCC with several unresolved
16 issues that would bear on issues raised in Plaintiff's Complaint and Redbox's Motion to Dismiss.

17 **C.    The SoundBite Petition Presents the FCC With Several Unresolved Issues That Could Directly Bear on the Outcome in This Case.**

18 The parallels between the three issues raised in the SoundBite Petition and those issues
19 present in this case are apparent.  Accordingly, guidance from the FCC, if not allowed to issue
20 before this matter proceeds, could clarify or alter the applicable law in the middle of this case.

21 First, SoundBite argues that the software used to configure its hardware and send
22 confirmation text messages is not an ATDS because it "does not have the capacity to generate and
23 send confirmations of opt-out requests in a random or sequential order; nor are the opt-out
24 confirmations either random or sequential" and it allows only the delivery of text messages to
25 people who have submitted an opt-out request.  *Id.* at 6-7.  As Redbox has argued, the same could
26 also be said for confirmation of opt-in requests.  *See* Motion to Dismiss at 5-6, 13, 15-16.

27
28

72292-1012/LEGAL23492410.4    -6-    DEFENDANT REDBOX'S MOTION TO STAY OR DISMISS WITHOUT PREJUDICE

Specifically, there is a need for the FCC to clarify the meaning of the term "capacity" in the definition of an ATDS as it applies to text messages in general and confirmation text messages, software used to configure hardware, and the potential implications for widely-available, everyday consumer technology.  As stated by Twilio:

> Th[e ATDS] definition … is quickly being overcome by technological advances, especially if "capacity" is extended broadly.  Almost all modern telecommunications equipment has the capacity, through software or hardware alternations, to autodial random or sequential numbers without human intervention. … [A]n iPhone could be considered an ATDS because it has the "capacity" to dial an app that acts as an ATDS from the iTunes store.  The Commission should grant GroupMe's petition,[3] and find that an ATDS must have the capacity, *at the time of use*, to autodial random or sequential numbers without human intervention and without first being altered through hardware or software changes.  A broader interpretation of "capacity" would mean that many technologies, such as smartphones or computer serves, would be considered an ATDS.

*Id.* at 6-7 (citing Petition for Expedited Declaratory Ruling and Clarification of GroupMe, Inc., CG Dkt. No. 02-278 (filed Mar. 1, 2012)).  Others have joined SoundBite's request for clarity on this issue.  *See, e.g.,* Verizon Comment at 8 ("A text message directed to a single telephone number, for the purpose of responding to a request from that number, uses neither 'random' nor 'sequential' number generation process."); Comment of Varolii Corp. at 3 ("The Commission should … remove uncertainty and confirm that if the telephone equipment or system is calling or texting a number from any customer list or other nonrandom or sequential list, then the system is not 'using a random or sequential number generator' and is not an [ATDS]."); Comments of CTIA—The Wireless Association® at 3 ("The equipment used to acknowledge the receipt of a

---

[3] The issue of "capacity" was also raised in the Petition for Expedited Declaratory Ruling and Clarification of GroupMe, Inc., CG Docket No. 02-278 (filed Mar. 1, 2012).  The FCC has not sought comment on the GroupMe petition but the SoundBite Petition implicates the same issue and, because the FCC is the proper agency to consider the issue in the first instance, the lack of a proceeding would not keep the Court from invoking the doctrine of primary jurisdiction.  *See Lyon v. Gila River Indian Community*, 626 F.3d 1059, 1075-76 (9th Cir. 2010) *cert. filed* 80 U.S. L.W. 3058 (U.S. Jul. 15, 2011) (invoking the doctrine of primary jurisdiction is further justified when an agency is already considering the relevant issue).  Commenters also presented to the FCC that one-time confirmation text messages are sent with prior express consent.  *See* Comment of Verizon & Verizon Wireless at 4-7.  Again, when the FCC is the proper agency to consider this issue in the first instance, the Court is not prevented from invoking the doctrine of primary jurisdiction even though the FCC did not request public comment on this issue.

1  text message by sending a one-time, precise opt-out confirmation text message to specific

2  subscribers … lacks the capacity to generate and dial random or sequential number.").

3        Second, SoundBite asserts that a "one-time confirmation text message … sen[t] within

4  minutes of receiving an opt-out request—falls within the grace period that applies for entities to

5  process a consumer's opt-out request."  Petition at 4-5; *see* 47 C.F.R. 64.1200(a)(3)(iii)(B).  The

6  SoundBite Petition notes that the FCC has considered the issue of a grace period with respect to

7  telephone and facsimile marketers, but has not addressed the issue with respect to text messaging.

8  *Id.*; *see, e.g.,* Comments of Twilio Inc. at 8 (noting that if the FCC were to not apply a grace

9  period for the processing of text message opt-out requests, "the TCPA would be inconsistently

10  applied between voice calls and text message 'calls'.").  Should the FCC determine that these

11  final, confirmation messages are not actionable because they fall within such a grace period, then

12  at least one of two text messages Plaintiff complains about would not be actionable on its face.

13        Finally, SoundBite asserts that opt-out confirmation text messages "are consistent with

14  good consumer policy and promote the public interest."  Petition at 7-9.  This complements

15  Redbox's argument that applying the TCPA to confirmation text messages violates the First

16  Amendment because these messages are consistent with the government interests underlying the

17  TCPA.  Motion to Dismiss at 9-13.  As explained by Verizon and Verizon Wireless:

> The [Mobile Marketing Association] guidelines are designed to promote transparency so that customers fully understand and control their participation in mobile marketing campaigns.  For this reason, the guidelines rely on information messages both to opt in and opt out of campaigns to ensure that customers know their status within the parameters governing the campaign. …These messages are consistent with the TCPA and the Commission's rules implementing the TCPA because they protect the privacy interests of consumers as well as the legitimate business interests of commercial entities.

Comments of Verizon & Verizon Wireless at 7-8.  There is clearly a need to resolve this conflict

when there are sound legal and policy arguments supporting the use of confirmation text

messages, and yet numerous entities face potential nationwide class liability for these practices.

In sum, the SoundBite Petition presents the FCC with unresolved and unclear issues under the TCPA that will require the balancing of consumer protection, public policy, business, and legal issues.  This determination is best left, in the first instance, to the FCC.

### IV.   Conclusion

Under the doctrine of primary jurisdiction, the Court should stay this proceeding or dismiss it without prejudice pending the FCC's resolution of the SoundBite Petition.

DATED:  May 21, 2012               **PERKINS COIE LLP**

By: /s/ Amanda J. Beane
    Amanda J. Beane

Attorneys for Defendant
Redbox Automated Retail, LLC

## CERTIFICATE OF SERVICE

I certify that on May 21, 2012, I electronically filed the foregoing DEFENDANT REDBOX AUTOMATED RETAIL, LLC'S MEMORANDUM IN SUPPORT OF MOTION TO STAY OR DISMISS WITHOUT PREJUDICE with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following attorneys of record:

Abbas Kazerounian
KAZEROUNI LAW GROUP, APC
2700 North Main Street, Suite 1000
Santa Ana, CA 92866
AK@kazlg.com

Joshua B. Swigart
HYDE & SWIGART
411 Camino Del Rio South, Suite 301
San Diego, CA  92108-3551
josh@westcoastlitigation.com

Attorneys for Plaintiff Kathleen Holt

I certify under penalty of perjury that the foregoing is true and correct.

DATED this 21st day of May, 2012.

        s/ Amanda J. Beane
        Attorney for Defendant
        E-mail:  ABeane@perkinscoie.com